■ In the Matter of RICHARD J. SMITH et al., as Trustees of the Property of the NEW YORK, NEW HAVEN & HARTFORD RAILROAD Co., Petitioners, v. JAMES A. LUNDY et al., Constituting the Public Service Commission of the State of New York, Respondents.— REYNOLDS, J. Proceeding under CPLR article 78 (transferred to the Appellate Division of the Supreme Court by order of the Supreme Court, Albany County) to review a determination of the Public

Service Commission. On April 26, 1966 the Public Service Commission directed petitioners to prepare plans at the earliest possible date for new permanent facilities to replace the facilities at its Columbus Avenue Station, which were partially destroyed by fire on January 14, 1966 and completely destroyed by another fire on April 8, 1966, and in the interim to provide immediately temporary shelters and temporary facilities for the sale of tickets. On March 16, 1967 petitioners applied for a rehearing because a proposed modernization of petitioners' railroad services under the auspices of a multi-state commission might render obsolete any immediate construction of new permanent station facilities at Columbus Avenue. Additional hearings were held and in accord with the examiner's report the commission issued an order on June 21, 1967 requiring petitioners to submit plans for permanent facilities by June 30, 1968 and to complete construction of same by December 31, 1968. At the same time the commission confirmed its order of April 26, 1966, upon the examiner's conclusion that there was nothing to prevent petitioners from providing the temporary facilities which at that point petitioners had failed to do. On July 21, 1967, petitioners appealed to Supreme Court from the commission's order of June 21, 1967. Subsequently, on December 12, 1967 the commission, believing that further delays in the reorganization of petitioners' services were in prospect, adopted an order suspending the direction for construction of a permanent station, but reaffirmed its direction for the furnishing of temporary facilities for the sale of tickets. Petitioners initially assert that the commission's order is arbitrary and capricious or an abuse of discretion (CPLR 7803, subd. 3) and/or is not supported by substantial evidence (CPLR 7803, subd. 4). The record, however, reveals that during 1965 the Columbus Avenue agent sold an estimated 13,400 multiple ride tickets and approximately 36,600 one-way and round-trip tickets. Moreover, the hearing examiner found that although it makes little difference to the passengers where they buy one-way or round-trip tickets and payment on the train is probably even somewhat more convenient, the purchase of multiple trip tickets by mail is not at all practical so commuters must buy them at the terminal station, which in most cases is Grand Central Terminal, causing commuters some delay and inconvenience. In addition, the commuters testified that the ticket agent had kept the station clean and had maintained various small conveniences for passengers. Finally, revenue from the sale of all tickets at Columbus Avenue amounted to almost $200,000 in 1965 while the estimated cost is something under $10,000 or $9,000 per year to rent and maintain a temporary facility for the sale of tickets and to pay a full time agent. On this state of the record, we find no basis to disturb the commission's determination based on balancing the public convenience against the financial burden to the petitioners. The order is neither arbitrary, capricious nor an abuse of discretion and is clearly supported by substantial evidence. Petitioners also assert that since the requirements of section 77 (subd. [c], par. [2]) of the Bankruptcy Act (U. S. Code, tit. 11, § 205, subd. [c], par. [2]) have not been satisfied the order under review has not become effective. In our opinion section 77 (subd. [c], par. 2) was not intended to govern the case at bar since the proposed discontinuance of the sale of tickets at the Columbus Avenue station is not the type of action which is the concern of the Interstate Commerce Commission (*Palmer* v. *Massachusetts,* 308 U. S. 79). The statute itself provides initially that "the trustee or trustees shall be subject to lawful orders of State regulatory bodies of statewide jurisdiction to the same extent as would the debtor if a petition respecting it had not been filed". Certain exceptions follow, but the legislative history reveals such were intended only

to give the Interstate Commerce Commission authority which prior thereto was thought to have been vested in the District Courts processing bankruptcy proceedings and not to limit the traditional scope of the State regulatory agencies (Congressional and Administrative News [1958 ed.], pp. 4111–4119). In addition involved is only a modest outlay to provide temporary ticket-selling facilities, the expense of which is about the same as the prior cost of maintaining the permanent facilities. Determination confirmed, and petition dismissed, with costs. Gibson, P. J., Herlihy, Reynolds, Staley, Jr., and Greenblott, JJ., concur in memorandum by Reynolds, J.